IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | : | |
| | : | Case No. 1:19-cr-30; 1:19-cr-53 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | **Order Denying Motion for** |
| Zachary A. Stinson, | : | **Compassionate Release** |
| | : | |
| Defendant. | : | |

This matter is before the Court on Defendant Zachary Stinson's pro se Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A), which he filed in his two criminal cases, No. 1:19-cr-30 and No. 1:19-cr-53.[1]  (Case No. 1:19-cr-30, Doc. 45; Case No. 1:19-cr-53, Doc. 30.)  The Government responded in opposition.  (Case No. 1:19-cr-30, Doc. 49; Case No. 1:19-cr-53, Doc. 33.)  Stinson also filed a reply.  (Case No. 1:19-cr-30, Doc. 53.)  For the reasons that follow, Stinson's Motion in each case will be **DENIED**.

I.    **BACKGROUND**

On May 28, 2019, pursuant to a Rule 11(c)(1)(C) Plea Agreement, Stinson pled guilty to two Informations, each alleging one count of Travel with Intent to Engage in Illicit Sexual Conduct with a minor in violation of 19 U.S.C. § 2423(b).[2]  (Case No. 1:19-cr-30, Doc. 19; Case No. 1:19-cr-53, Doc. 6.)  Case No. 19-cr-30 charged Stinson with traveling to Ohio (the "Ohio Case") for the purpose of engaging in illicit sexual contact with a minor, whereas Case No. 19-cr-53 charged Stinson with traveling to Kansas (the "Kansas Case") for the purpose of engaging in illicit sexual contact with a minor.  (Case No. 19-cr-30, Doc. 18; Case. No. 19-cr-53, Doc. 5.)

---

[1] Because Stinson filed the same Motion in both cases, the Court will refer to it as a singular Motion.

[2] As the same Plea Agreement was filed in both of Stinson's criminal cases, the Court will refer to it as a singular Plea Agreement.

Pursuant to the Statement of Facts to which he admitted:

On January 31, 2018 ZACHARY A. STINSON did travel in interstate commerce with the intent to engage in illicit sexual conduct.  Specifically, Stinson travelled from Bluffton, Indiana to the Cincinnati, Ohio area with the intent to engage in sexual acts with C.S. a person whom he knew to be 13 years old. STINSON met C.S. in his vehicle where they engaged in oral sex.

Previously, on December 31, 2017, STINSON travelled from Bluffton, Indiana to the Cincinnati, Ohio area to engage in sexual acts with C.S.  STINSON entered the home of C.S. where they engaged in oral sex.  STINSON knew C.S. was 13 years old.

Additionally, on July 28, 2017, ZACHARY A. STINSON did travel in interstate commerce with the intent to engage in illicit sexual conduct. Specifically, STINSON travelled from Bluffton, Indiana to Leavenworth, Kansas with the intent to engage in sexual acts with A.D., a person whom he knew to be 13 years old.  STINSON picked A.D. up from his home in Leavenworth and they went to a hotel where they engaged in oral and anal sex.

(Case No. 19-cr-30, Doc. 19 at PageID 64; Case No. 19-cr-53, Doc. 6 at PageID 21.)

On December 18, 2019, Stinson was sentenced to 132 months in prison to run concurrently in both of his criminal cases, as well as five years of supervised release.  (Case No. 19-cr-30, Doc. 38; Case No. 19-cr-53, Doc. 24.)  The Court's sentence fell below the United States Sentencing Guidelines advisory range but within the range agreed to by the parties. Stinson is incarcerated at FCI Oakdale, and his projected release date is July 15, 2027.  Federal Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last accessed August 24, 2022).

Stinson filed the same Motion for Compassionate Release in each of his criminal cases on February 28, 2022.  (Case No. 19-cr-30; Doc. 45; Case No. 19-cr-53, Doc. 30.)  The Government responded in opposition, and Stinson replied. (Case No. 1:19-cr-30, Docs. 49, 53; Case No. 1:19-cr-53, Doc. 33.)  The matter now is ripe.

## II.    STANDARD OF LAW

Stinson seeks a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).  The Court lacks authority to resentence a defendant, except as permitted by statute.  *United States v. Houston*, 529 F.3d 743, 748–49 (6th Cir. 2008).  The compassionate release provisions in 18 U.S.C. § 3582(c)(1)(A) were "intended to be a 'safety valve' to reduce a sentence in the 'unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner.'"  *United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020) (quoting S. Rep. 98-225, at 121 (1983)).  A defendant seeking a sentence reduction bears the burden of proof.  *Id*. at 426; *United States v. Hill*, No. 5:14CR337, 2020 WL 5104477, at *1 (N.D. Ohio Aug. 31, 2020).  Section 3582(c) provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c).

After enactment of the First Step Act of 2019, the text of 18 U.S.C. § 3582(c)(1)(A) now makes clear that a defendant can bring a compassionate release motion on his or her own behalf after the defendant either fully exhausts any administrative remedies or waits 30 days from the date his or her warden receives his or her request for release. *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). Exhaustion of administrative remedies is a mandatory claim-processing rule. *United States v. Alam*, 960 F.3d 831, 833–834 (6th Cir. 2020). This claim-processing rule "serves important purposes" including that "prison administrators can prioritize the most urgent claims" and "investigate the gravity of the conditions supporting compassionate release and the likelihood that the conditions will persist." *Id.* at 835.

If a defendant has exhausted administrative remedies, the district court must then (1) determine whether "extraordinary and compelling reasons" warrant a reduction and (2) weigh the relevant sentencing factors listed in § 3553(a). *United States v. Jones*, 980 F.3d 1098, 1101, 1108–09 (6th Cir. 2020).[3] "Congress did not define what constitutes an 'extraordinary and compelling reason,' except to state that '[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.'" *United States v. Hunter*, 12 F.4th 555, 561 (6th Cir. 2021) (quoting 28 U.S.C. § 994(t)) (alteration in original). Courts generally have discretion to define what constitutes "extraordinary and compelling" reasons. *Id*. at 562. Nonetheless, the Sixth Circuit recently defined two restrictions on that discretion:

> First, non-retroactive changes in the law, whether alone or in combination with other personal factors, are not "extraordinary and compelling reasons" for a sentence reduction. Second, facts that existed when the defendant was sentenced cannot later be construed as "extraordinary and compelling" justifications for a sentence reduction.

---

[3] The Sixth Circuit determined in *Jones* that the only U.S. Sentencing Commission Policy Statement potentially applicable to motions for compassionate release—U.S.S.G. § 1B1.13—is inapplicable to cases filed by federal inmates. 980 F.3d at 1109, 1111. Therefore, the district court has full discretion to define "extraordinary and compelling reasons" without reference to the policy statement in § 1B1.13. *Id*. at 1111; *United States v. Elias*, 984 F.3d 516, 519–20 (6th Cir. 2021).

*Id*.; *United States v. McKinnie*, 24 F.4th 583, 586–90 (6th Cir. Jan. 26, 2022) (citing *Hunter*).[4]

The § 3553 factors referenced in the statute include (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence imposed to reflect the seriousness of the offense; (3) the need to protect the public from further crimes of the defendant; (4) the sentencing guideline range; and (5) the need to avoid unwarranted sentence disparities among defendants with similar records guilty of similar conduct. 18 U.S.C. § 3553(a). These factors implicitly allow the Court to consider the amount of time served when determining if a reduction in sentence is appropriate. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020). Also, district courts can consider non-retroactive changes in law relevant to sentencing as part of their weighing the § 3553(a) sentencing factors. *See Hunter*, 12 F.4th at 564; *United States v. Jarvis*, 999 F.3d 442, 445 (6th Cir. 2021). District courts are encouraged to be "explicit and particular with their factual reasoning" when they consider the § 3553(a) factors. *Jones*, 980 F.3d at 1113.

## III.    ANALYSIS

### A.    Exhaustion of Administrative Remedies

The Government argues Stinson's Motion should be denied without prejudice because he failed to exhaust his administrative remedies. Pursuant to 18 U.S.C. § 3582(c)(1)(A), the exhaustion requirement is satisfied if 30 days have lapsed from the warden's receipt of the defendant's request for release. *Ruffin*, 978 F.3d at 1004.

Stinson argues he exhausted his administrative remedies by emailing the Warden of FCI Oakdale on January 25, 2022 and stating he "would like to request that you please file a 3582(c) motion with the court to reduce my sentence due to an incorrect guideline calculation being

---

[4] *But see United States v. Owens*, 996 F.3d 755, 763–64 (6th Cir. 2021); *United States v. McCall*, 20 F.4th 1108, 1116 (6th Cir. 2021), *rehearing en banc granted, vacated*, No. 21-3400, 29 F.4th 816 (6th Cir. April 1, 2022).

relied upon during my sentencing" and "would also like to request [a sentence] reduction" due to COVID-19 programming restrictions.  (Case No. 19-cr-30, Doc. 45-1 at PageID 219; Case No. 19-cr-53, Doc. 30-1 at PageID 172.)  The document includes a header labeled: "TRULINCS 77604061 – STINSON, ZACHARY A – UNIT: OAK-A-B."  (*Id*.)

The Government asserts that the Bureau of Prisons has no records of receiving a request from Stinson and therefore failed to render any decision on the matter.  It also asserts that the United States was unable to learn from the Bureau of Prisons in a timely manner what the appropriate process is for seeking compassionate release from FCI Oakdale.  Stinson replied that his request was sent to the Warden via the TRULINCS system, and inmates are unable to print draft emails, which suggests the email must have been sent to be printed.  He also asserts that the TRULINCS system does not allow inmates to save communications with staff, and all messages are purged after 60 days.  (Case No. 1:19-cr-30, Doc. 53 at PageID 244.)  Construed liberally, Stinson's evidence is sufficient to demonstrate that he exhausted his administrative remedies by requesting compassionate release in his January 25, 2022 TRULINCS message to the Warden and filing a motion more than thirty days thereafter.

### B.  No Extraordinary and Compelling Reason for Release

However, Stinson has not met his burden to demonstrate an extraordinary and compelling reason for his release.  Stinson argues that the Court miscalculated his sentencing range and that COVID-19 mitigation policies enacted during the pandemic caused him to miss out on recidivism reduction programs, which could have led to sentence time credits.  Neither argument justifies his early release.

1. **Sentencing Objections**

Stinson raises objections to the Court's decisions at his Sentencing Hearing on December 18, 2019 and argues that these alleged sentencing errors constitute an extraordinary and compelling reason for his release. His position is flawed for several reasons: (1) the arguments are procedurally improper; (2) the motion, construed as a motion to vacate, is untimely; and (3) the arguments lack merit.

First, a motion for compassionate release is not the appropriate vehicle to attempt to relitigate sentencing decisions from several years ago. The compassionate release provisions in 18 U.S.C. § 3582(c)(1)(A) were intended to reduce sentences in unusual cases in which the defendant's circumstances are so changed, such as by terminal illness, that continued confinement would be inequitable. *Ebbers*, 432 F. Supp. 3d at 430 (quoting S. Rep. 98-225, at 121 (1983)). Objections to sentencing decisions that Stinson failed to raise at the time of sentencing or were fully considered and rejected at the time of sentencing are not the changed circumstances intended for the purpose of compassionate release. A defendant may challenge his sentence by filing a 28 U.S.C. § 2255 motion or an appeal, but Stinson did neither.

Courts agree that attempting to relitigate sentencing decisions through a compassionate release motion is improper. "Defendant's claims are not properly raised in a motion for compassionate release because a federal prisoner cannot raise claims to vacate a sentence under 28 U.S.C. § 2255 in a motion for compassionate release." *United States v. Galemmo*, No. 1:13-cr-141, 2022 WL 1184146, at *2 (S.D. Ohio April 21, 2022), *appeal filed*, No. 22-3459 (6th Cir. May 18, 2022); *see United States v. Proge*, No. 2:12-cr-20052-06, 2021 WL 3857440, at *2 (E.D. Mich. Aug. 30, 2021). Permitting prisoners to relitigate § 2255 challenges to the legality of their sentences "would, in effect, 'impermissibly circumvent' the procedural limitations

Congress designed for § 2255 motions." *United States v. James*, No. 13-20669, 2021 WL 2012783, at *3 (E.D. Mich. May 20, 2021); *see also United States v. Albanese*, No. 97-359, 2021 WL 2400762, at *3 (E.D. Pa. June 11, 2021) ("Convictions and sentences can be challenged on direct appeal or in the habeas forum, but not in a compassionate release motion under 18 U.S.C. § 3582(c)(1)(A).").

Stinson waived his right to appeal in his Plea Agreement, and he did not timely file a 28 U.S.C. § 2255 motion.[5]  (Case No. 1:19-cr-30, Doc. 19 at PageID 61, ¶ 10 "Waiver of Appeal"; Case No. 1:19-cr-53, Doc. 6 at PageID 18 (same); 28 U.S.C. 2255(f).)  Thus, even construing the motion as a  motion to vacate under §2255, there is no basis to hear the §2255 motion on the merits.

Yet, even if the merits were to be considered, the Court's sentencing decisions were sound.  Stinson pled guilty to Count 1, Transportation of Minors – Travel with Intent to Engage in Illicit Sexual Conduct in each of his two cases.  In the Statement of Facts to the Plea Agreement, Stinson admitted to twice traveling to Ohio to engage in sexual contact with C.S., a minor, and once traveling to Kansas to engage in sexual contact with A.D., a minor.  (Case No. 19-cr-30, Doc. 19 at PageID 64; Case No. 19-cr-53, Doc. 6 at PageID 21.)  At sentencing, the Court treated the second admitted instance of travel to Ohio for the purpose of engaging in

---

[5] The one-year limitations period runs from different time markers set forth in 28 U.S.C. § 2255(f):

> **(f)** A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of--
> **(1)** the date on which the judgment of conviction becomes final;
> **(2)** the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> **(3)** the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> **(4)** the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

sexual contact with a minor as a pseudo count in the Ohio Case pursuant to United States Sentencing Guideline ("U.S.S.G.") § 1B1.2(c). (Case No. 1:19-cr-30, Transcript, Doc. 40 at PageID 153.)

Stinson now argues that it was improper to consider a pseudo count based on the Statement of Facts, an argument he never previously raised. U.S.S.G. § 1B1.2(c) states: "[a] plea agreement (written or made orally on the record) containing a stipulation that specifically establishes the commission of additional offense(s) shall be treated as if the defendant had been convicted of additional count(s) charging those offense(s)." The Probation Officer and Court relied upon and cited U.S.S.G. § 1B1.2(c) as the basis for computing Stinson's offense level. Neither party objected to inclusion of the pseudo count at the time of Sentencing.[6] (Presentence Report ("PSR"), ¶ 43.) There is no basis to disrupt the ruling.

At sentencing, Stinson's attorney objected to the Court's decision not to group the pseudo count with count 1 of the Ohio Case, but the Court overruled the objection. He raises this same objection again now. At sentencing, relying upon *United States v. Bivens*, 811 F.3d 840 (6th Cir. 2016), the Court stated:

> According to Sentencing Guidelines Section 3D1.2, all counts involving substantially the same harm shall be grouped together into a single count group. The defendant stipulated in the statement of facts that he traveled to Ohio from Indiana on a second occasion to engage in illicit sexual conduct with C.S. who is also the subject of Count 1 of Docket Number 1:19-CR-30. However, the count of conviction cannot be grouped with the pseudo count as the two instances represent separate instances of fear or harm as explained in Application Note 4 under Sentencing Guidelines Section 3D1.2.
>
> The Court agrees that the *Bivens* case, and the cite for *Bivens* is 811 F.3d 840, that's a Sixth Circuit case from 2016, is directly on point and that Pseudo Count 1A should not be grouped with Count 1. In *Bivens*, the Sixth Circuit held that a defendant's travel to abuse the same child two months apart were separate instances of harm and should not be grouped. The Sixth Circuit explained even if

---

[6] Stinson argues that the Court should not have included a pseudo count because U.S.S.G. § 1B1.3 does not apply here. The Government does not dispute this. As noted, the basis for the pseudo count was U.S.S.G. § 1B1.2.

> the same act is repeated during an ongoing continuous pattern of criminality
> between a single defendant and his victim, each act usually amounts to a fresh
> harm the victim must face anew. For that reason, the Court is going to deny the
> objection of the defendant.

(Case No. 1:19-cr-30, Doc. 40 at PageID. 151–52.) There is no basis to revisit that decision.

In sum, Stinson's argument that the Court erred in its 2019 sentencing decisions, thereby constituting an extraordinary and compelling reason for his early release, is improper, untimely, and without merit.

## 2. Missed Recidivism Reduction Opportunities

Stinson argues that due to COVID-19 safety protocols enacted by the prison at the height of the COVID-19 pandemic, he missed out on recidivism reduction programs, which could have potentially led to sentence time credits. He claims deprivation of these opportunities necessarily extended his incarceration. His missing these opportunities, he argues, constitutes an extraordinary and compelling reason for his early release.

The pandemic altered the way the world functioned for a period of time, both inside and outside of prison. The altered functioning of prisons (and the world) during the pandemic does not constitute an extraordinary and compelling reason for early release. Unfortunately, there was nothing extraordinary about the altered prison operations at FCI Oakdale at this time—inmates were universally more restricted in their access to programs. To find this presents an extraordinary and compelling reason for early release would entitle any inmate who served time during the pandemic to similar treatment. Moreover, Stinson also has not provided the Court with any specific information about programs he was deprived of or why they are not available to him now. Thus, this argument is without merit.

### C.  18 U.S.C. § 3353(a) Factors Do Not Support Early Release

Even if Stinson demonstrated an extraordinary and compelling reason, the sentencing factors do not support early release.  Among the 18 U.S.C. § 3553(a) factors to be considered are the nature and characteristics of the defendant's offense; the defendant's criminal history; the need for the sentence imposed to reflect the seriousness of the defendant's conduct; the need to protect the public; the Guidelines range; and the need to avoid unwarranted sentencing disparities.  The Court thoroughly considered these factors at the initial Sentencing Hearing and its conclusions have not changed.

As to the nature and characteristics of the offense, Stinson admitted to travelling across state lines multiple times to sexually abuse minors.  On two occasions, Stinson engaged in sexual contact with a thirteen-year-old male.  On one occasion, Stinson engaged in sexual conduct with a second thirteen-year-old male.  Stinson was aware of the ages of the victims and even supplied one with an electronic device to further facilitate their contact.

Stinson preyed upon young adolescent boys, which concerns the Court about his ongoing risk to young boys upon release.  The Court obtained statements from the parents of the victims at the time of sentencing, which were disturbing and demonstrate the long-lasting harm caused by Stinson's conduct.  For instance, C.S.'s mother described her son's life as a "nightmare;" her son feels shame and regret, requires therapy, and struggled on a daily basis to engage in activities with family and friends.  (PSR, ¶ 35.)

That Stinson had no prior criminal history does not weigh in favor of release, as the conduct to which he admitted included the sexual abuse of multiple children.  The Court is aware of Stinson's struggles with his bisexuality and history of alcohol abuse and considered his personal history at the time of sentencing.

11

Based on the nature of the offense, the safety of the community is a high priority in this case.  The Court remains concerned that Stinson will be an ongoing risk to children as demonstrated by the instant offense and his engaging in the same pattern of sexual abuse of children.  The Court finds that the ongoing need to protect the public's most vulnerable population, children, is very high in this case.  Finally, releasing Stinson early would undermine his sentence and create sentencing disparities amongst other similarly-situated child sex offenders.

There is no justification for Stinson's early release.  The Court's evaluation of the sentencing factors has not changed since the time of Stinson's sentencing.  The Court stands behind its decision that Stinson serve his justified sentence, which was below his Sentencing Guideline range.

## IV.      CONCLUSION

For the reasons stated herein, Stinson's Motion for Compassionate Release (Case No. 1:19-cr-30, Doc. 45; Case No. 1:19-cr-53, Doc. 30) is **DENIED**.

**IT IS SO ORDERED**.

S/Susan J. Dlott
Susan J. Dlott
United States District Judge